[Cite as *Reynolds-Cornett v. Reynolds*, 2014-Ohio-2893.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| PAULA D. REYNOLDS-CORNETT, | : | CASE NO. CA2013-09-175 |
| Plaintiff-Appellee, | : |  |
|  | : | O P I N I O N<br>6/30/2014 |
| - vs - | : |  |
|  | : |  |
| JEFFREY REYNOLDS, | : |  |
| Defendant-Appellant. | : |  |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR04101317

Thomas G. Eagle, 3386 North St. Rt. 123, Lebanon, Ohio 45036, for plaintiff-appellee

Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Jeffrey Reynolds (Father), appeals a decision from the Butler County Court of Common Pleas, Domestic Relations Division, establishing child support and awarding attorney fees in favor of plaintiff-appellee, Paula D. Reynolds-Cornett (Mother).

{¶ 2} Father and Mother were divorced by decree on April 21, 2005. Two minor

children were born of this marriage, J.R. and C.R. As of October 23, 2007, Father was the residential parent and legal custodian of J.R., and Mother, the residential parent and legal custodian of C.R. In 2012, Father decided he could no longer care for J.R. Accordingly, on June 11, 2012, Mother filed a motion to modify the custody of J.R. and establish a child support order. The parties agreed to a change of custody where Mother would also be the residential parent and legal custodian of J.R.[1] Subsequently, the magistrate recommended a child support order based on a purported agreement by the parties. However, this order was not adopted by the trial court and the matter was remanded for a hearing to recalculate support.

{¶ 3} Prior to the hearing, Mother filed two additional motions, one requesting child support to be extended past the natural age of majority for J.R. due to his severe and permanent disabilities, and a motion for attorney fees. The magistrate conducted a hearing on these issues on January 3, 2013 and March 12, 2013. On April 25, 2013, the magistrate issued a decision, recommending child support be paid by Father to Mother in the amount of $614.43 a month, including the two percent processing fee, and that such support continue past the age of majority until further order from the court.[2] The magistrate also ordered Father to pay Mother's attorney's fees in the amount of $3,039. Father filed objections to the magistrate's decision.

{¶ 4} On July 10, 2013, the trial court held a hearing on Father's objections. On September 6, 2013, the court overruled Father's objections and affirmed the magistrate's

---

1. C.R. remained in the custody of Mother.

2. Father has not appealed trial court's decision to extend child support for J.R. beyond the age of majority.

April 25, 2013 decision.[3] Father now appeals, raising three assignments of error for review.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT FOUND APPELLEE TO NOT BE VOLUNTARILIY UNEMPLOYED.

{¶ 7} In his first assignment of error, Father argues the trial court erred in finding he failed to meet his burden and establish that Mother was voluntarily unemployed. Father contends he presented evidence that Mother was able to work and capable of earning a minimum $11.00 an hour, but she voluntarily chose not to work. Father asserts Mother's reason for not working, to take care of J.R., was an insufficient justification given the availability of free nursing assistance through Medicaid.

{¶ 8} Prior to addressing the merits of Father's arguments, we must first address Father's contention that the trial court failed to conduct an independent review of the record, as required by Civ.R. 53(D)(4)(d). Father asserts the trial court improperly deferred to the magistrate's credibility and factual conclusions. The record simply does not support Father's arguments. Rather, the record demonstrates the trial court merely acknowledged the magistrate was in the best position to evaluate the credibility of the parties. Moreover, the trial court specifically stated it conducted an independent review of the record and concluded the magistrate's decision was "fully supported by the evidence presented." Accordingly, we find the trial court performed an independent review of the magistrate's decision in

---

3. We note that on May 30, 2013, based on Mother's motion for correction or clarification, the magistrate issued a second decision which increased Father's child support obligation from $614.43 to $887.56 per month. The magistrate noted that in reaching its April decision and ordering Father to pay $614.43, she utilized the split custody statutory child support worksheet, rather than the appropriate sole custodian child support computation worksheet. Accordingly, the magistrate recalculated child support using the correct worksheet and ordered Father to pay $887.56. Although the parties indicated at the hearing on the objections and in their briefs to this court that Father has been ordered to pay $887.56 per month, there is nothing in the record which indicates that the trial court adopted the magistrate's May 30, 2013 decision. *See* Civ.R. 53(D)(4)(a); *Hart v. Spenceley*, 12th Dist. Butler No. CA2011-08-165, 2013-Ohio-653, ¶ 11 ("A trial court must act on a magistrate's decision in order to give the recommendation the force of law").

compliance with Civ.R. 53(D)(4)(d). We now turn to the merits of Father's arguments regarding the trial court's decision.

{¶ 9} A trial court's decision as to whether a parent is voluntarily unemployed is a question of fact and will not be disturbed on appeal absent an abuse of discretion. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 14. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 10} In calculating child support, a trial court must determine the annual income for each parent. For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b); *see also Marron v. Marron*, 12th Dist. Warren Nos. CA2013-11-109 and CA2013-11-113, 2014-Ohio-2121, ¶ 45. Potential income includes imputed income that a trial court determines the parent would have earned if fully employed based upon the criteria set forth in R.C. 3119.01(C)(11)(a)(i)-(xi). The criteria under R.C. 3119.01(C)(11)(a) includes the age and any special needs of the children and personal factors as to the parents, including the parent's prior employment experience, education, skills and training, employment availability, and local wages. *Marron* at ¶ 45; *Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005 and CA2013-02-012, 2013-Ohio-3996, ¶ 74. These factors, although specifically related to imputing income, may also be relevant in determining whether a parent is voluntarily unemployed or underemployed. *Kessler* at ¶ 17, fn. 2. Before a trial court may impute income to a parent, however, it must first find that the parent is voluntarily unemployed or underemployed. R.C. 3119.01(C)(11); *see also Kessler* at ¶ 13. The parent who claims the other parent is voluntarily unemployed bears the burden of proof on that issue. *Marron* at ¶ 45.

{¶ 11} Mother's testimony from the hearing indicates she is 41 years old and a high school graduate, but does not hold a college degree. Mother testified that she last worked outside the home three years ago at Kohl's Department Store warehouse as a "picker." At that time, she earned $11 per hour. However, Mother explained that it would be difficult for her to obtain full-time work due to her responsibilities in caring for J.R. and C.R. As to J.R., Mother testified he has congenital muscular dystrophy and therefore requires extensive assistance in engaging in daily activities. In particular, Mother testified she bathes J.R. daily, dresses him, transports him to and from his wheelchair, and prepares his meals. Mother also explained she is up multiple times during the night to turn J.R. in his bed. In addition, although J.R. is in school full-time, Mother stated it is often unpredictable when he will be unable to go to school due to illness. As to C.R., Mother testified that she has a learning disability which requires Mother to assist C.R. with her homework in the afternoons.

{¶ 12} At the time of the hearing, father failed to present any evidence of, or cross-examine Mother on work that was available to her. Mother's wages and earning potential three years ago are of limited relevancy as to what is available to her today. Father failed to prove there were employment opportunities available in the Butler County area for high school-educated individuals like Mother, or that she had the skills, experience, or ability to engage in employment outside the home, especially in light of the needs of J.R. and C.R. Moreover, it is not unreasonable for Mother, given her low wage potential, the extensive medical needs of J.R., and the needs of C.R., to care for the children herself rather than to seek the aid of hired help. *See Kitchen v. Kitchen*, 12th Dist. Butler No. CA2002-12-298, 2004-Ohio-1189, ¶ 16. Although Father argues free nursing care is available to Mother to assist in the care of J.R., as Father used such "free" care when J.R. was under his custody, Father failed to present evidence regarding the specifics of this care and whether J.R. was still eligible for it. Father also failed to demonstrate how, given Mother's responsibilities for

both children, this assistance would enable her to obtain employment outside the home. In fact, Mother testified that even if she had such nursing assistance, she would still be unable to work outside the home.

{¶ 13} Under the facts and circumstances of this case, we find the trial court did not abuse its discretion in finding Mother was not voluntarily unemployed. Father's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS COMPUTATION OF APPELLANT'S INCOME FOR PURPOSES OF CHILD SUPPORT.

{¶ 16} In his second assignment of error, Father argues the trial court erred by including $11,199, the average of his overtime pay for the past three years, as part of his gross income.[4] Father argues he submitted evidence, beyond his own testimony, that overtime pay "had been eliminated," and therefore it should not have been included as part of his gross income as his overtime pay constituted nonrecurring income.

{¶ 17} "A trial court's decision in matters concerning child support shall be reviewed under an abuse of discretion standard." *Combs v. Walsh*, 12th Dist. Butler No. CA2005-07-198, 2006-Ohio-7026, ¶ 16, citing *Booth v. Booth*, 44 Ohio St.3d 242, 144 (1989). As mentioned above, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶ 18} For a parent employed to "full capacity," R.C. 3119.01(C)(5) defines "income" for purposes of calculating child support as "the gross income of the parent." "Gross income"

---

4. Father's overtime pay for the three years prior to the hearing was as follows: (1) in 2010 it was $10,157; (2) in 2011 it was $8,737, and (3) in 2012 it was $14,703.

is defined by R.C. 3119.01(C)(7) as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in [R.C. 3119.05(D)] * * *." However, gross income does not include "nonrecurring or unsustainable income or cash flow items," which is defined as income or cash flow that a parent receives "in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).

{¶ 19} In calculating income from overtime for purposes of a parent's gross income, R.C. 3119.05(D) provides that the court shall include the lesser of either (1) "[t]he yearly average of all overtime * * * received during the three years immediately prior to the time when the person's child support is being computed" or (2) "[t]he total overtime * * * received during the year immediately prior to the time when the person's child support obligation is being computed." R.C. 3119.05(D); *see also Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 22.

{¶ 20} In addition, R.C. 3119.05(A) requires a parent's income to "be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts, and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for tax returns." R.C. 3119.05(A); *see also Ornelas* at ¶ 23; *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 12. This court has previously stated that "a parent must exactly adhere to this requirement and prove their current income by presenting those documents listed in R.C. 3119.05(A)." *Benjelloun* at ¶ 12, quoting *Ornelas* at ¶ 23.

{¶ 21} At the hearing, Father presented the testimony of Joyce Deeter, the former Benefits Employee Relations Manager for Deceuninck North America, Father's employer. Deeter testified that based on Father's change in position from an extrusion specialist to a

tool tuning technician in September 2012, "forced overtime" was no longer available. Deeter explained Father's prior position required him to work 12-hour shifts for seven days out of a fourteen-day time period. Accordingly, there was forced or "automatic" overtime with that position. Father's new position, however, only required him to work eight-hour shifts with no "automatic overtime." Deeter further testified that any other overtime would be "minimal" as instructed by the executive staff. Father also submitted a letter written by Deeter which similarly stated: "With the position change, the forced overtime has been eliminated and therefore the overtime is very minimal." Father contends this letter from Deeter represents a "document from the employer regarding the elimination of overtime" in compliance with the requirements of R.C. 3119.05(A) and our decision in *Benjelloun*. Father also testified he was no longer guaranteed overtime pay with this new position. Father explained he had received some overtime pay that year, in 2013, but it was mainly due to working through lunch.

{¶ 22} We find the trial court did not err in including Father's average overtime pay in determining his gross income for child support calculations. Although "non-recurring" cash flow items are excluded from gross income, Father failed to present evidence that his overtime pay had been eliminated and therefore was "nonrecurring." Deeter's letter and her subsequent testimony only established that forced overtime had been eliminated due to Father's new position. Both the letter and Deeter's testimony indicated that although voluntary overtime would be "minimal," such overtime had not been eliminated and was still available. Moreover, the record demonstrates, contrary to Father's assertions, that he continues to receive overtime pay. From January 15, 2013 through March 4, 2013, the first few months in his new position, Father received almost $3,000 in overtime pay.

{¶ 23} Accordingly, based on the record before us, the trial court did not abuse its discretion in including the average of Father's overtime pay for the past three years in its calculation of Father's gross income. In the vein of fairness, we note that because the trial

court retains jurisdiction to modify child support, Father is free to request a modification of his child support obligation if he fails to continue to receive overtime pay or his income changes and this results in a substantial change of circumstances. *See* R.C. 3119.79(A); *Loetz v. Loetz*, 63 Ohio St.2d 1, 2 (1980).

{¶ 24} Father's second assignment of error is overruled.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT AWARDED ATTORNEY FEES TO APPELLEE.

{¶ 27} Father argues in his third assignment of error that the trial court erred in awarding attorney fees to Mother. Father contends the trial court abused its discretion because his conduct did not cause or increase Mother's attorney's fees. Father also argues the trial court erred by failing to consider Mother's additional income, including disability payments she receives for both children, and her current husband.

{¶ 28} An award of attorney fees is within the sound discretion of the trial court. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 62. A trial court's decision to award attorney fees will be reversed only if it amounts to an abuse of discretion. *Foppe v. Foppe*, 12th Dist. Warren No. CA2010-06-056, 2011-Ohio-49, ¶ 34.

{¶ 29} Pursuant to R.C. 3105.73(B), "[i]n any post-decree motion or proceeding that arises out of an action for divorce, * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award is equitable, the court may consider "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B); *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 57.

{¶ 30} After a thorough review of the record, we find the trial court did not abuse its discretion in ordering Father to pay Mother $3,039 in attorney fees. Prior to awarding attorney fees, the trial court stated it had "considered all factors in [R.C.] 3105.73." One such factor is the income of the parties. Father argues the court failed to consider income Mother receives in the form of disability payments for several of her family members. However, at the hearing, Mother testified regarding the disability payments received for C.R., J.R., and her current husband. Moreover, the record reflects a substantial disparity in income and earning potential between the parties. Mother, a high school graduate, has not worked outside the home in three years, and when she did work, she only earned approximately $11 per hour. In addition, Mother's income originates, in large part, from government assistance in the form of disability payments for several family members and from food stamps. Father, conversely has held a job with the same employer for over 14 years and earns over $19 per hour. In addition, Mother testified she had to borrow money from J.R. to pay the attorney fees related to this action so she could "protect [his] rights." Based on these circumstances, we find the trial court did not abuse its discretion in finding an award was equitable and ordering Father to pay Mother $3,039 in attorney fees.

{¶ 31} Father's third and final assignment of error is overruled.

{¶ 32} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.