[Cite as *Montgomery v. Montgomery*, 2015-Ohio-2976.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

HEATHER M. MONTGOMERY,

    PLAINTIFF-APPELLEE,               CASE NO.  14-14-22

    v.

JAMES P. MONTGOMERY,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 10-DR-0267

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  July 27, 2015

APPEARANCES:

    *Alison Boggs*  for Appellant

    *Jeffrey A. Merklin*  for Appellee

Case No. 14-14-22

**SHAW, J.**

{¶1} Respondent-appellant James Montgomery ("James") brings this appeal from the October 27, 2014, judgment of the Union County Common Pleas Court granting petitioner-appellee Heather Montgomery ("Heather") child support for the parties' three children in the amount of $900.38 per month.[1]

{¶2} The facts relevant to this appeal are as follows. James and Heather were married on September 21, 2001, and had three children together. On December 10, 2010, they filed a petition for dissolution.

{¶3} On January 18, 2011, the trial court filed a judgment entry dissolving the parties' marriage. (Doc. No. 19). Based on the parties' agreement, the trial court ordered shared parenting wherein both parents were named residential parents of the parties' three children. (*Id.*) Under the shared parenting plan, the children would stay primarily with Heather; however, James would exercise weekend and summer visitation according to local rules and he would also exercise visitation on Tuesday and Thursday evenings through the week. (*Id.*)

{¶4} At the time of the dissolution decree, the parties listed Heather's income as $160,000, and James's income at $20,000. While the guideline child support documentation attached to the decree indicated that James would have been required to pay Heather $264.26 per month as long as she was providing the

---

[1] This amount includes the 2% processing fee.

-2-

children's health insurance,[2] the parties agreed, and the trial court ordered, that "neither parent is [o]rdered to pay child support to the other at this time."[3] (*Id.*) In ordering no child support, the trial court reasoned that "[g]iven Husband's necessity to relocate and to obtain suitable housing for the children, and pursuant to O.R.C. Section 3119.24, * * * payment of child support by either party would be unjust, inappropriate, and not in the best interest of the children." (*Id.*)

{¶5} On February 13, 2014, over three years later, Heather filed a post-decree motion to terminate the parties' shared parenting plan and name her residential parent as she claimed that James was regularly missing his scheduled parenting time with the children and was not paying his share of expenses. (Doc. No. 23). She also requested an order for James to pay guideline child support regardless of whether the shared parenting plan was terminated. (*Id.*) In addition, Heather requested an order for James not to smoke around the children, and she requested an order for James to show cause why he should not be held in contempt for his failure to pay his share of expenses for the children as required under the dissolution decree. (Doc. No. 23). When she filed the motion, Heather claimed that James owed her $1,093 for his share of expenses he had not yet paid. (*Id.*)

---

[2] This amount included the processing fee.
[3] It is not clear from the record why James was designated as the obligor on the child support worksheet, we can speculate that it was because the children stayed primarily with the mother, but there is no indication as to why that was the case.

{¶6} On April 25, 2014, James filed a response to Heather's motions, requesting that they be denied. (Doc. No. 37). In addition, James requested that Heather be ordered to pay child support to him. (*Id.*)

{¶7} The case proceeded to a hearing before a magistrate on August 27, 2014. At the hearing, Heather withdrew her contempt motion as James had made payments to her towards the children's medical expenses and she proceeded to give testimony on the remaining issues.

{¶8} Heather testified that she was a mortgage loan officer who earned money solely from commissions. (Aug. 27, 2014, Tr. at 11). Heather testified that at the time of the dissolution her income had been $160,000, as was stated in the dissolution documentation. (*Id.*) Heather testified that her income had declined each year since the dissolution, due in part to changed government regulations regarding mortgage loans. (*Id.* at 21). Heather testified, and provided her tax returns to support her testimony, that her adjusted gross income was $124,217 in 2011, $114,558 in 2012, and $101,525 in 2013. (*Id.* at 23-25).

{¶9} Heather testified that early in 2014, her income looked to decline even further with her employer, Fifth-Third, so she started looking at other employment opportunities. (Tr. at 22). Heather testified that she received a job offer from Concord Mortgage Group, the details of which were in writing and introduced as an exhibit. (Tr. at 22-26); (Pl.'s Ex. E). Heather testified that she ultimately

accepted the job with Concord, where she indicated she would earn twice the amount per loan that she had been earning from her previous employer. According to the offer sheet introduced into the record, and Heather's testimony, the position at Concord provided her with a $10,000 bonus, and a $10,000 per month salary for the months of March and April. (Tr. at 27). The salary would transition then into commission-only pay after April, and any commissions earned by Heather during those months where she was paid the $10,000 salary would offset the salary paid to her. (*Id*. at 27).

{¶10} According to Heather's testimony, and a hand-written note on the offer sheet, the $10,000 per month salary offer from Concord was extended beyond April for an additional three months. (Pl.'s Ex. E). Heather testified that at the time of the hearing she was no longer receiving the salary payments and was commission-only. (Tr. at 28). From her commission payments, Heather testified that she made approximately $6,800 in commissions in July, she expected she would make approximately $4,000 for August, and she believed she would receive approximately $6,000 for September based on closings she had set for the following month. (*Id*. at 28-29). Heather testified that she was paid "a month behind" so she would receive the money she made in July in August, the money she made in August in September, and the money she made in September in October. (*Id*. at 28).

{¶11} When Heather was specifically questioned by the magistrate as to what she expected to make in 2014, Heather testified that she was "hoping" to make between $70,000 and $80,000. The magistrate then asked, "[s]o $75,000 per year? And based on, what, your sense of the market?" (Tr. at 70). Heather replied, "the sense of what I've closed in the last six months there." (*Id.*)

{¶12} Related to her motion for termination of shared parenting, Heather testified that due to James's out of state employment he had missed a significant number of days he was supposed to have the children, and that Heather often had little notice as to when those days would be. Heather documented the days she claimed James had missed with the children for the past year and an exhibit with those dates was introduced into the record.[4] (Pl.'s Ex. A).

{¶13} Heather also testified that James had not been paying his share of expenses for the children. (Tr. at 38). However, she testified that since filing her post-decree motions, she had received payments from James toward those expenses, and that he only owed her $526.91. (*Id*. at 39). The unpaid expenses included money related to prescriptions for the children, school lunches, baseball fees, and visits to the doctor. (*Id*. at 40).

---

[4] The dates listed by Heather that James missed with the children included the following days and weeks in 2013, with the reasoning for missing in parenthesis: July 22-26 (out of town for work), August 26-30 (work), September 9-13 (work), October 3 (sick, included text stating "not taking kids until further notice"), October 7-11 (work), October 22-25 (work), October 31-November 1 (work), November 4-8 (work), November 18-22 (work). (Pl.'s Ex. A). The dates listed by Heather that James missed with the children included the following days and weeks in 2014: January 6-10 (work), February 19-23(work), March 3-7(work), March 31-April 4 (work), May 7-9 (work). (*Id*.)

{¶14} James then took the stand and testified. James testified that he was currently employed full-time by "Shear Companies," which divided his time between two entities, both owned by Shear. (Tr. at 77). James testified that his income from this employment was $48,636 in 2013. (Tr. at 76); (Def.'s Ex. 2). James testified that at the time of the hearing he was currently getting paid by one Shear company at $680.17 per week, and from the other Shear company at $494.10, every other week. (Tr. at 77-78).

{¶15} James testified that while he was currently employed full time, he had received a letter from his employer telling him that the employer had not received a government contract it was hoping to get, so James should start to seek other employment soon. (Tr. at 79). James testified he had received the letter 3 or 4 months prior to the final hearing, and was still working full-time at that time. (*Id.*)

{¶16} James also testified that he had missed some of his parenting days with his children, but he testified that he had only cancelled for work, or in the rare case, illness, and he gave Heather as much notice as he had himself. (Tr. at 87). James testified that he asked Heather if he could make up the missed time with the children and she did not allow him to do so. (*Id.* at 86).

{¶17} On August 29, 2014, the magistrate issued a decision on the pending matters. In the decision, the magistrate recommended that the shared parenting

plan not be terminated, as there was not sufficient evidence to terminate the plan. (Doc. 53). In addition, the magistrate recommended that James pay child support in the amount of $900.38 per month, based upon his income being $48,214.00 and Heather's expected income of $75,000. (Doc. No. 53).

{¶18} On September 25, 2014, James filed objections to the magistrate's decision. In his objections, James argued that the magistrate improperly set child support against him and that the magistrate improperly determined Heather's income to be $75,000. (Doc. No. 59). James also argued that the magistrate should have found that Heather was voluntarily underemployed. (*Id*.) In addition, James argued that the magistrate erred in finding that there was a substantial change in circumstance in this case. (*Id*.) On October 6, 2014, Heather filed her response to James's objections. (Doc. No. 61).

{¶19} On October 15, 2014, the trial court filed an entry analyzing but ultimately overruling James's objections to the magistrate's decision. (Doc. No. 62).

{¶20} On October 27, 2014, the trial court filed a final judgment entry ordering James to pay Heather child support in the amount of $900.38 per month. (Doc. No. 65). The trial court also denied mother's motion to terminate shared parenting. (*Id*.)

{¶21} It is from this judgment that James appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SET CHILD SUPPORT AGAINST MR. MONTGOMERY INSTEAD OF SETTING IT AGAINST MRS. MONTGOMERY.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED WHEN IT FAILED TO FOLLOW THE STATUTORY REQUIREMENTS OF ORC 3119.05 FOR INCOME VERIFICATION BEFORE SETTING CHILD SUPPORT.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED WHEN IT DID NOT APPLY ORC 3119.07 TO THE FACTS IN THIS CASE, AS CHILD SUPPORT SHOULD NOT HAVE BEEN SET.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED WHEN IT FOUND THERE WAS A SUBSTANTIAL CHANGE IN CIRCUMSTNACES TO WARRANT THE CALCULATION OF CHILD SUPPORT.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED WHEN IT DID NOT IMPUTE INCOME TO MRS. MONTGOMERY WHEN SHE WAS VOLUNTARILY UNDEREMPLOYED.**

{¶22} We elect to address some of the assignments of error together and out of the order in which they were raised.

*Fourth Assignment of Error*

{¶23} In James's fourth assignment of error, he argues that the trial court erred in finding that a substantial change in circumstances occurred. Specifically,

he contends that Heather created her "change in circumstances" by refusing to allow James to make up the parenting time he missed with the children, and that the parties had originally contemplated James's increased income, making his substantially increased income not an uncontemplated change in circumstances.

{¶24} Since trial courts are vested with broad discretion in deciding whether to modify a child support order, *Brose v. Copeland*, 3d Dist. Seneca No. 13-13-08, 2013-Ohio-3399, ¶ 11, we review a trial court's ruling on a child support modification request for an abuse of discretion. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390 (1997). A trial court abuses its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Brose* at ¶ 11, citing *State v. Boles,* 2d Dist. Montgomery No. 23037, 2010–Ohio–278, ¶ 17–18. In applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶25} R.C. 3119.79 controls the modification of child support orders and provides, in pertinent part, as follows:

> **(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than**

**ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.**

**\* \* \***

**(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.**

{¶26} We have previously found that where the original child support order resulted from the parties' voluntary agreement, R.C. 3119.79(A) must be read in conjunction with R.C. 3119.79(C) to appropriately determine whether a modification of the order is proper. *Adams v. Adams*, 3d Dist. Union No. 14-13-01, 2013-Ohio-2947, at ¶ 16.

{¶27} This assignment focuses on the substantial change of circumstances requirement under R.C. 3119.79(C). A trial court granting a modification of child support "must find both (1) a change of circumstances, and (2) that such change in

circumstance 'was not contemplated at the time of the issuance of the child support order.' " *Bonner v. Bonner,* 3d Dist. Union No. 14–05–26, 2005–Ohio–6173, ¶ 11, quoting R.C. 3119.79(C). "[A] substantial change of circumstances typically exists where the minor child's needs or the allocation of parenting time has changed." *Adams* at ¶ 17, citing *Melick v. Melick,* 9th Dist. Summit No. 26488, 2013–Ohio–1418, ¶ 14–17 (additional citations omitted).

**{¶28}** In this case, the magistrate conducted a lengthy analysis of change of circumstances, which was quoted at length by the trial court in its entry overruling James's objections on the matter. The trial court quoted the following excerpt of the magistrate's analysis.

> **The current child support order as set forth in the Plan for Shared Parenting obligates neither party to pay monthly child support. The court takes judicial notice of the findings of fact that at the time of the dissolution, Father was unemployed and that there was no basis to impute any income to father.** [FN omitted]. **Father reaffirmed his unemployment during his testimony on the current motion. Nonetheless, the child support worksheet attached to the Decree resulted in a notional child support obligation to Father of $259.00 per month plus processing fee based upon income of Father in the amount of $20,000.00 per year and of $160,000.00 per year for Mother.**
>
> **\* \* \* [T]he Separation Agreement, Plan for Shared Parenting, and Decree of Dissolution are ambiguous in that the worksheet and recitation of Father's income are inconsistent and the only reason set forth therein for no child support being ordered is the need for father to relocate to obtain suitable housing and a general reference to the factors set forth in R.C. 3119.24. The court takes judicial notice that during the hearing on the Petition for Dissolution on January 14, 2011, in response to**

**questioning from the bench, Father testified that he was making $20,000.00 per year as indicated on the worksheet and that deviation was in the best interest of the children in order to allow Father to maintain a comparable standard of living for the children while the children were in his care.**

**[A]lthough the Decree of Dissolution and Plan for Shared Parenting clearly anticipate Father obtaining employment in the then future, there is no specific provision for the effect on child support of that event. Further, the parties agreed to share school, activity and unreimbursed medical expenses equally. Based on the totality of the circumstances, the court construes that agreement to be one to provide in kind support for the children which in part justified the order of no child support order.**

**[A]lthough the Wife's income at the time of the last order was $160,000.00 per year, more or less, the evidence is clear that her income has declined in each succeeding year. * * ***

**\* \* \***

**[S]ince the time the last child support order was entered, there have been significant and substantial changes in circumstances not contemplated by the parties at the time the last order was entered. Specifically, the evidence shows that Mother's income has declined in the years following the dissolution and independent of Mother's change in employment: $122,884.00 in [2011]; 112,790.00 in 2012; and $99,718.00 in 2013.[5] There is no evidence that the 38% decline in Mother's income between 2010 and 2014 was anticipated or voluntary on the part of Mother. This substantial change in circumstances is separate and apart from whether Father's income from employment was anticipated at the time of the dissolution.**

(Doc. 62).

---

[5] These figures quoted appear to be Heather's wages, salaries and tips from her W-2s, rather than her adjusted gross income, which was what Heather testified to having made in those years at the hearing. *See* (Pl.'s Exs. B, C, D).

**{¶29}** After the trial court recited the magistrate's findings, it added its own analysis regarding change of circumstances, which reads as follows.

> **In addition to the foregoing, Father's income has more than doubled since the last order of setting support as in-kind only. As argued by Mother, Father now travels out of state on an as needed basis and is unavailable to exercise parenting time as set forth in the Plan for Shared Parenting. Based upon the totality of the circumstances, the court FINDS that there has been [a] significant change in circumstances since the last order of support was entered.**

(Doc. 62).

**{¶30}** Upon our own review of the record and the trial court's ruling, and given our deferential standard to the trial court's finding, we can find no abuse of discretion. There were several changed circumstances from the original divorce decree that contributed to the substantial change in circumstances finding. First, Heather's income dropped dramatically, notwithstanding what the proper valuation should be for her 2014 income and her income going forward (which is discussed in the next assignment of error), her income had fallen from $160,000 in 2011 to roughly $100,000 in 2013. Thus Heather's income dramatically shifted, which was not contemplated by the parties.

**{¶31}** Second, James's income also increased substantially. His income went from what was stated as $20,000 at the time of the dissolution to over $48,000 at the time of the final hearing. Although James argues that his increased

income was contemplated by the parties, it is not clear that it was actually contemplated, or that if it was, it was contemplated to this degree.

{¶32} Next, James's employment was regularly taking him out of state so he could not always exercise his parenting time with the children. Heather documented a significant number of days that James missed, and claimed that the additional days created a greater burden on her. James did testify that he asked Heather if he could make up the days he missed, and she declined to allow him to do that. Nevertheless, Heather also introduced evidence into the record that James had not been paying his share of the children's expenses as he had agreed.

{¶33} On the basis of the record before us we cannot find that the trial court abused its discretion in finding that a substantial change of circumstances occurred here where both parents' income had altered substantially and James was unable to exercise a significant amount of his parenting time. Accordingly, James's fourth assignment of error is overruled.

*Second Assignment of Error*

{¶34} In James's second assignment of error, he argues that the trial court failed to follow the statutory requirements of R.C. 3119.05 for income verification of Heather before setting child support against James. Specifically, James argues that Heather's income was not supported by sufficient documentation as required by R.C. 3119.05(A).

**{¶35}** As in the previous assignment of error, we review this issue under the abuse of discretion standard. *Brose v. Copeland*, 3d Dist. Seneca No. 13-13-08, 2013-Ohio-3399, ¶ 11.

**{¶36}** When determining a parties' income for child support purposes, R.C. 3119.05(A) controls what needs to be supplied to establish income. It reads,

> **(A) The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.**

R.C. 3119.05(A).

**{¶37}** This Court and other Ohio Appellate Courts have held that parties must exactly adhere to R.C. 3119.05(A) when documenting income. *See Brose*, *supra*, at ¶ 16; *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA2013-09-175 2014-Ohio-2893, ¶ 20, citing *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 12 (" '[A] parent must exactly adhere to [the documentation] requirement and prove their current income by presenting those documents listed in R.C. 3119.05(A).' "). " 'Failure to obtain the necessary financial information renders the court's order arbitrary and therefore an abuse of discretion.' " *Basham v. Basham*, 3d Dist. Allen No. 1-2-37, 2002-Ohio-4694, ¶ 6, quoting *Aiello v. Aiello*, Seneca App. No. 13-96-12 at *2 (Sept. 11, 1996).

**{¶38}** In this case, the dissolution had indicated that Heather made $160,000 per year in 2010. At the final hearing, Heather presented her tax records for the years following the dissolution, which indicated that her adjusted gross income was $124,217 in 2011, $114,558 in 2012, and $101,525 in 2013. (Pl.'s Exs. B, C, D). As the final hearing was held in August of 2014, her gross income for that year was not yet known, so Heather attempted through her testimony and some documentation to establish that her income in 2014 was going to be even lower than it was in 2013.

**{¶39}** At the hearing, Heather indicated that due to her declining income as a loan officer with Fifth-Third, she sought other employment early in 2014. Heather testified that she received an offer from Concord Mortgage Group to be a loan officer. Heather introduced the written offer sheet she received from Concord into evidence, which contained the following language.

> **Your initial compensation package will be as follows:**
>
> - **$10,000 bonus to be paid on February 28, 2014.**
>
> - **$10,000 salary to be paid in March and April, 2014.**
>
> - **Any commission earned in March will go towards offsetting the $10,000 salary. If commissions exceed $10,000 for March, those monies will be paid to you.**
>
> - **Any commission earned in April will be paid to you in May.**

- **If for some reason you terminate your employment with Concord Mortgage Group within the first year, the $30,000, as described previously, will be paid back.**

- **You will also have a one year non-solicitation of any Concord/NOIC employees by either directly soliciting them or assisting in the solicitation.**

(Pl.'s Ex. E).

**{¶40}** On the bottom right of the offer sheet, Heather had, herself, handwritten a note which said, "This was then drawn out @ 10,000/month an additional 3 months due to 5/3 offered [sic] me to stay [and] a guarantee of 6 months." (Pl.'s Ex. E). Heather explained at the final hearing that when Fifth-Third learned she was considering leaving, Fifth-Third made her an offer to stay. Heather testified that Concord then offered to increase the number of months she would receive a guaranteed salary of $10,000 for an additional three months, as indicated in her note. There is nothing in the record other than Heather's own hand-written note and her testimony to verify her claims regarding the additional months. Regardless, attached to the Concord offer sheet was a "Loan Officer Compensation Agreement," stating that once the initial salaried period ended, Heather would ultimately be paid only by commission.

**{¶41}** Heather produced documents that verified some of her income for 2014. She introduced into the record "Earnings history" statements from February, March, and April 2014, detailing that the $10,000 initial payments

-18-

Concord had stated in the offer sheet would be paid had actually been paid to her. (Pl.'s Ex. E). However, Heather introduced absolutely no documentation for May, June, or July of 2014 establishing any income received by Heather, whether through Concord extending the months she would receive salary or otherwise.

{¶42} As to her income for the rest of the year outside of the months listed in the offer sheet, Heather gave testimony as to what she believed she would receive for the months of August, September, and October, based on her commissions for July, August, and September. Heather testified that she was paid "a month behind" so her commissions for July, August, and September were paid the following month. Heather testified that she would receive approximately $6,800 in August for July commissions, and approximately $4,000 in September for August commissions.[6] (Tr. at 29). Heather testified that at the time of the hearing, she had closings planned in September that would earn her commissions of approximately $6,000 for that month, paid in October. (*Id.*)

{¶43} In addition to the money Heather testified she expected to earn from Concord for commissions, Heather also testified that prior to starting at Concord, she "was only making, you know, $3,000 in January and February" at Fifth-Third from her commissions. (Tr. at 33). There was no documentation entered into evidence to support these commission figures either from Concord or Fifth-Third.

---

[6] Heather perhaps later contradicts this $4,000 figure by quoting the figure as $4,800. (Tr. at 70).

{¶44} In its decision on the matter, the magistrate ultimately estimated Heather's income to be $75,000. The magistrate based this number upon the following direct questioning of Heather at the final hearing.

**THE COURT: What is your reasonable expectation on what your income is going to be, reliably, in the foreseeable years for 2014, 2015?**

**[HEATHER]: Reliable income, I'm hoping to be 70 to $80,000. I'm hoping.**

**THE COURT: I'm asking for expecting.**

**A: Expecting. I'm expecting that. Yes.**

**THE COURT: So $75,000 per year? And based on, what, your sense of the market?**

**A: Well, the sense of what I've closed in the last six months there. As long as I close, I mean, it was 69—or 6,800 last month, it's 4,800[7] this month. So I'm – and what I've closed previous months, I'm expecting, you know.**

**THE COURT: All right. Thank you. * * ***

(Tr. at 69-70).

{¶45} Based on this questioning, and the little documentation presented, the magistrate estimated Heather's income to be $75,000. In settling on $75,000 for Heather's income, the magistrate conducted the following analysis in its decision.

**Although the Wife's income at the time of the last order was $160,000.00 per year, more or less, the evidence is clear that her income has declined in each succeeding year. Wife testified that**

---

[7] Heather had testified earlier in the hearing that she was going to receive $4,000 in commission for the month of August.

**during March, 2014, she left her previous commission-only job with Fifth/Third Bank for a new commission-only position with a mortgage company and that she estimates her current income to be now $75,000.00 per year based upon her experience and projections. Mother testified that she anticipated an opportunity to double her rate of commission in her new position and that she felt her earnings were in a long decline at Fifth/Third Bank. Father argues that Mother is now voluntarily underemployed.**

(Doc. No. 53).

{¶46} James filed an objection to the magistrate's decision on this issue, stating that the magistrate's decision was not based on documentary evidence as was required under R.C. 3119.05(A). The trial court overruled this objection, reasoning as follows.

**With respect to Mother's income, the evidence is more complex * * *[.] Mother testified that during February, 2014, she left her previous commission-only job with Fifth/Third Bank for a new commission-only position with a mortgage company and she estimated her current income to be now $75,000.00 per year based upon her experience and projection of sale commissions for the foreseeable future. In support of this testimony, Mother presented evidence of her income since the time of the last order of support in the form of her tax returns and supporting documents for 2011, 2012, 2013; and her letter of engagement from her employer with records of income and earnings during February, March, and April, 2014. Because her current income is based upon commission and is now not directly supported by tax returns and pay stubs, some analysis in determining Mother's income is required. The question is whether or not the documentary evidence is sufficient for a reliable analysis to be conducted thereby verifying the income as required by R.C. 3119.05(A).**

> **The court agrees with Father that the documentary evidence in this case is not as direct, certain and clear as one might reasonably prefer; however, the issue is whether the documentary evidence is sufficient to establish Mother's income by the greater weight of the evidence, not by the standards of *clear and convincing* or *beyond a reasonable doubt*.** [Emphasis *sic*]. **The court FINDS that the Magistrate's recommendation is a rationally based inference drawn from the circumstantial evidence of Mother's income set forth in the documents offered into evidence.**

(Emphasis sic). (Doc. No. 62).

**{¶47}** The trial court's entry makes clear that the court was slightly concerned with the lack of documentary evidence supporting Heather's income. The court found, however, given the low standard of proof that the magistrate's recommendation was rationally based upon the circumstantial evidence of Heather's income.

**{¶48}** While we do not deny that the trial court did the best it could with what was before it, the trial court based its ruling on a magistrate's decision that was simply not supported by the type of documentation contemplated in R.C. 3119.05(A). Heather provided documentation for only three months out of the year, none of which contained earnings that were commission based from which the court could accurately or properly extrapolate her expected income. There was absolutely no documentation introduced regarding the commission earnings Heather testified to, leaving the trial court to extrapolate her income *entirely based*

*upon Heather's testimony.* The statute and the case law interpreting it require more than testimony to satisfy the burden of proof.

{¶49} Nevertheless, even assuming that Heather had documents to support her testimony, the magistrate and trial court thus would have had information that Heather made (according to her testimony) approximately $3,000 in January, $3,000 in February, $10,000 for March, April, May, June, and July, $4,000 for August (or $4,800 if Heather's second figure is used), $6,800 in September, approximately $6,000 in October, and a $10,000 bonus that was paid to Heather in February by Concord for joining Concord. Adding these numbers together, we get a total of $82,800 that Heather would have earned through October of 2014. That still leaves Heather with more time to earn money in 2014, which would have greatly exceeded the $75,000 expected income attributed to her.

{¶50} While the magistrate and the trial court seem to presume that this $75,000 figure might be a rational extrapolation for what Heather could expect to make in the future based on her *oral testimony* of her commissions, there is absolutely no documentation to support Heather's testimony regarding her commissions and that is simply not satisfactory pursuant to R.C. 3119.05(A) to create such an extrapolation.

{¶51} Our determination that this documentation is insufficient is consistent with this Court's and other Courts' precedents on this issue. In *Basham*

*v. Basham*, 3d Dist. Allen No. 1-2-37, 2002-Ohio-4694, we reversed a trial court's determination of gross income where insufficient documentation was presented to support a trial court's income determination. *Basham* at ¶¶ 7-8. In *Brose v. Copeland*, 3d Dist. Seneca No. 13-13-08, 2013-Ohio-3399, we affirmed a trial court's finding that testimony could not substitute for a lack of documentary evidence under R.C. 3119.05(A). *See Brose* at ¶¶ 15-17. Similar to this Court's precedent, the Twelfth District held in *Ornelas v. Ornelas,* 12th Dist. Warren No CA2011-08-094, 2012-Ohio-4106, ¶ 25, that, "Allowing a party in a divorce proceeding to reduce his gross income level, and therefore his child support obligation, by testimony alone, without proper verification as required under R.C. 3119.05(A), is an abuse of the trial court's discretion."

**{¶52}** It could be that Heather now actually makes less than the $75,000 per year she was credited with, or it could be that she makes more. Regardless, we cannot find that the $75,000 figure used by the magistrate and the trial court was supported by *documented* evidence of the kind required by R.C. 3119.05(A) and the caselaw interpreting it. Therefore we have no choice but to sustain James's second assignment of error.

*Fifth Assignment of Error*

**{¶53}** In his fifth assignment of error, James argues that Heather was voluntarily underemployed and thus the trial court failed to impute income to her for purposes of the court's child support calculation

**{¶54}** At the outset of our review, we would note that "a drop in income due to a voluntary choice 'does not necessarily demonstrate voluntary underemployment.' " *Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, ¶ 35, quoting *Woloch v. Foster*, 98 Ohio App.3d 806, 811 (2d Dist.1994). "The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Woloch* at 811. Whether a parent is voluntarily underemployed is a determination within the trial court's discretion and will not be disturbed absent an abuse of discretion. *Thaher v. Hamed*, 10th Dist. Franklin No. 09AP-970, 2010-Ohio-5257, ¶ 5, citing *Banchefsky v. Banchefsky,* 10th Dist. Franklin No. 09AP-1011, 2010-Ohio-4267, ¶ 8, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993).

**{¶55}** Revised Code 3119.01(C)(11) provides the following criteria for courts to use in determining whether a party is voluntarily underemployed.

> **(11) "Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child**

**support order, determines is voluntarily unemployed or voluntarily underemployed:**

**(a)    Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:**

**(i)    The parent's prior employment experience;**

**(ii)   The parent's education;**

**(iii)  The parent's physical and mental disabilities, if any;**

**(iv)   The availability of employment in the geographic area in which the parent resides;**

**(v)    The prevailing wage and salary levels in the geographic area in which the parent resides;**

**(vi)   The parent's special skills and training;**

**(vii)  Whether there is evidence that the parent has the ability to earn the imputed income;**

**(viii) The age and special needs of the child for whom child support is being calculated under this section;**

**(ix)   The parent's increased earning capacity because of experience;**

**(x)    The parent's decreased earning capacity because of a felony conviction;**

**(xi)   Any other relevant factor.**

{¶56} In this case, James argues essentially that since Heather took a job that is ultimately making her less money than she was making at her previous job, she is voluntarily underemployed. The magistrate considered James's argument

that Heather was voluntarily underemployed and determined that the court "must respect the reasonable choice of [Heather] to change jobs including the risk of short term consequences to the children. There is nothing in the record to undermine the testimony of Mother that her income was declining and that she reasonably believed she would increase her income by changing jobs." (Doc. No. 53). When James objected to this determination by the magistrate, the trial court overruled the objection, agreeing with the magistrate that the only evidence in the record was that Heather reasonably believed she would increase her income by changing jobs.

{¶57} Our own review of the record supports the trial court's decision. Heather testified at the hearing that she took her new position with Concord because of her rapidly declining income with Fifth-Third. She testified that she would earn "twice as much per loan," presumably meaning commission percentage. (Tr. at 62). Thus Heather testified that she expected to be able to earn more money at Concord. While perhaps that is turning out not to be the case, it is not difficult to see why Heather would have taken a position at Concord when she would be earning "twice as much per loan," and she would also be receiving a $10,000 bonus in addition to at least two months at a $10,000 salary. At the time Heather testified she was looking for a new position she indicated she was only

making $3,000 a month in commissions from Fifth-Third, so a $10,000 bonus with two months of a $10,000 salary would appear attractive.

{¶58} Therefore, on the basis of the record before us, we cannot find that Heather's decision was unreasonable, thus we cannot find that the trial court abused its discretion in declining to find Heather voluntarily underemployed. Accordingly, James's fifth assignment of error is overruled.

*First and Third Assignments of Error*

{¶59} In his first assignment of error, James argues that the trial court erred in assigning the child support obligation to him rather than to Heather. Specifically, he argues that since the parties were both residential parents there was no presumption as to which parent would pay support, and since Heather made more money than James (regardless of how her income was calculated), James was the more appropriate parent to receive child support. In James's third assignment of error, he argues that since the parties were under a shared parenting plan, child support should not have been set against him as a residential parent.[8]

{¶60} Notably James cites no case law to support either of these two assignments of error. Regardless, we do not find James's assertions persuasive. A shared parenting plan where both parents are residential parents does not prevent a

---

[8] We would note that this did not stop James from asking the court to award him child support even though he wanted the Shared Parenting Plan to remain in place.

trial court from awarding child support to a party. *See Bonvillian v. Clark*, 3d Dist. Mercer No. 10-13-20, 2014-Ohio-2003, ¶ 13.

**{¶61}** In any event, testimony indicated that the children stayed with Heather the majority of the time, and even when James was supposed to exercise parenting time he occasionally (or regularly) missed some of that time, often on short notice (notwithstanding his valid excuses). While James may simply have been unable to exercise that parenting time with his children, or to provide more notice to Heather when he would be unavailable to exercise that parenting time, it does not alter the fact that it left Heather carrying more of a burden than she already was.

**{¶62}** Moreover, the record indicated that James was not regularly paying his share of the children's expenses. Adding these circumstances to the fact that Heather's income has declined precipitously and James's income rose substantially, we cannot find that the trial court abused its discretion in awarding Heather child support rather than James, or that it was improper for the trial court to award child support against a residential parent. Therefore, James's first and third assignments of error are overruled.

**{¶63}** For the foregoing reasons James's first, third, fourth, and fifth assignments of error are overruled, and his second assignment of error is sustained. The judgment of the Union County Common Pleas Court is thus

affirmed in part and reversed in part and this cause is remanded to the trial court for further proceedings consistent with this opinion.

> ***Judgment Affirmed in Part,***
> ***Reversed in Part and***
> ***Cause Remanded***

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, P.J. concurring separately.**

{¶64} I concur with the opinion of the majority as far as it goes. However, the Appellant had also argued that in computing Heather's income the trial court should have relied on income averaging since she could not provide proper documentation of her current income. I would further note that any calculation of her 2014 income would necessarily be based on pure speculation since the year was not complete at the time of the hearing. Therefore, I would find the appellant's suggestion of averaging Heather's prior years of income to be the only proper method of fairly determining a figure to apply to support calculations. *See Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 53 (9th Dist.) ("Because in November 2003, [Appellant] had not yet filed his personal tax return, the trial court was required by statute to review the tax returns from 2000, 2001, and 2002.").

**{¶65}** I would further suggest that had we been considering an obligor's income for purposes of determining whether support should be lowered, we would have refused to speculate as to future income and either required proper documentation of income or income averaging. *See id.* I see no reason to depart from that approach in this situation.