[Cite as *Reinhart v. Allen*, 2009-Ohio-5277.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

GERALD R. REINHART,

    PLAINTIFF-APPELLANT,          CASE NO. 13-08-42

    v.

RACHAEL ALLEN,                O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 20770184

**Judgment Affirmed**

Date of Decision:   October 5, 2009

APPEARANCES:

    *Dean Henry* for Appellant

    *Elaine J. Knutson* for Appellee

**WILLAMOWSKI, J.**

{¶1} Plaintiff-Appellant, Gerald R. Reinhart ("Gerald") appeals the judgment of the Seneca County Court of Common Pleas, Juvenile Division, designating Defendant-Appellee, Rachael Allen ("Rachael") as the custodian and residential parent of the parties' young son. For the reasons set forth below, the judgment is affirmed.

{¶2} Gerald and Rachael are the parents of Caleb Ian Reinhart ("Caleb"), who was born in Findlay on July 16, 2007. Gerald and Rachael met and established a romantic relationship sometime around October 2006, but never married. Near the end of 2006, Rachel moved into Gerald's home in New Riegel, Ohio. In October 2007, after Caleb's birth, Rachael's mother came to Ohio for a short visit but remained indefinitely, also residing in Gerald's home. Both Rachael and her mother had previously lived in Queensbury, New York.

{¶3} Gerald and Rachael frequently fought and argued, with both parties asserting that the other was verbally threatening and domestically violent, although no charges for domestic violence were ever brought by either party. They separated from each other several times, with the last separation occurring in late 2007 when Gerald left the premises in order to avoid conflicts with Rachael. Gerald eventually had to file for an eviction order to remove Rachael from his

home. Rachael and her mother left with Caleb and moved to an apartment in Tiffin, Ohio, where they have resided since January 18, 2008.

**{¶4}** On November 13, 2007, Gerald filed this action, seeking to establish his paternity of Caleb, and for allocation of parental rights and responsibilities, parenting time, support, division of medical expenses, and other matters relating to the parent and child relationship. On November 20, 2007, he filed for ex parte relief to prohibit the removal of Caleb from the State of Ohio until further order of the court. Gerald claimed that Rachael had threatened to take Caleb back to Queensbury, New York, and not let him see his son. He later moved the court for temporary orders requesting parenting time with Caleb. On January 3, 2008, Rachael filed a motion seeking custody of Caleb and the establishment of child support. Both parties subsequently filed various other motions.

**{¶5}** Between November 28, 2007, and September 17, 2008, there were at least eleven dates when the court held hearings and heard trial testimony on various motions and filings, encompassing sixteen volumes of transcripts. Both Gerald and Rachael presented extensive evidence and testimony disparaging the other party's ability to properly and safely care for Caleb. The trial court stated:

> **[Gerald] and [Rachael] have spent a considerable time in this action presenting negative evidence about the other party. [Gerald] has repeatedly suggested that [Rachael] is mentally unstable. [Rachael] has repeatedly suggested that [Gerald] is unable to control his drinking. Both parties have reviewed negative episodes or histories involving the other party in an**

**attempt to convince the court that they are the better custodial parent.**

(Oct. 17, 2008, Judgment Entry, p. 41, ¶245.) However, after hearing all of the testimony, the trial court concluded that "[n]either parent has placed Caleb at risk of harm while in their respective care ***." Id.

{¶6} On October 17, 2008, the trial court issued its Judgment Entry designating Rachael as the residential parent. The court concluded that it continued to be in the best interests of Caleb to remain in the legal custody of Rachael. In addition to all of the factors in R.C. 3109.04, the court stated that it also considered the age of the child and the lack of any injury or harm to Caleb while he was in Rachel's care. The trial court stated that Rachael "has provided a consistent caring environment for the benefit of Caleb and has been his primary care-giver. The court also concludes that because Caleb has been in the primary care of [Rachael] since his birth, Caleb is more bonded with [Rachael] than [Gerald]." Id. at ¶244. The court also noted that Caleb enjoyed significant daily contact with his maternal grandmother, as she had been assisting Rachael with the care of Caleb since October of 2007.

{¶7} The trial court found that Gerald was the biological father and parent of Caleb, and established a visitation and companionship schedule. Gerald was ordered to pay child support and to continue to maintain health insurance for Caleb. The court also terminated the restraining order prohibiting Caleb from

leaving the state, but the parties were reminded of the requirements of the Local Rules on relocation out of state and that the matters were subject to the continuing jurisdiction of the court.

{¶8} It is from this judgment that Gerald appeals, presenting the following assignments of error for our review.

### First Assignment of Error

**The trial court abused its discretion and erred in designating Rachael Allen the residential parent of Caleb Ian Reinhart.**

### Second Assignment of Error

**The trial court's decision designating Rachael Allen as the residential parent of Caleb Ian Reinhart was not supported by competent, credible evidence.**

{¶9} Because both of the assignments of error are closely related, we elect to address them together. Gerald asserts that when the trial court made its determination regarding the allocation of parental rights, it failed to properly apply the facts to the standards set forth in R.C. 3109.04(F)(1). He specifically maintains that the trial court didn't appropriately consider: (1) Rachael's physical and mental health, (2) that Rachel is the least likely to honor the court-approved visitation and companionship rights, and (3) that Rachael has expressed an intention to relocate to another state.

{¶10} When reviewing a lower court's determination in a child custody proceeding, and considering what is in the best interest of a child, an appellate

court must affirm the decision unless the lower court abused its discretion. *LaBute v. LaBute*, 179 Ohio App.3d 696, 2008-Ohio-6190, 903 N.E.2d 652, ¶10. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142.

**{¶11}** With respect to our duty of deference to the trial court in disputes over the custody of children, the Ohio Supreme Court has stated:

> **The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. \*\*\* In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted.)**

*Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.

**{¶12}** R.C. 3109.04(B)(1) requires a trial court to consider a child's best interests when the trial court allocates parental rights. To determine a child's best interests, a trial court must consider the non-exclusive list of factors set forth in R.C. 3109.04(F)(1). *Fricke v. Fricke*, 3d Dist. No. 1-06-18, 2006-Ohio-4845, ¶7. R.C. 3104.04(F)(1) states that the court shall consider all relevant factors, including, but not limited to:

(a) the wishes of the child's parents

(b)   the wishes of the child, if interviewed in chambers;

(c)   the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests;

(d)   the child's adjustment to home, school and community;

(e)   the mental and physical health of all persons involved;

(f)   the person more likely to honor and facilitate visitation;

(g)   whether either parent has complied with child ordered support payments;

(h)   whether either parent has been involved in the abuse or neglect of a child;

(i)   whether either parent has denied the other parent's right to parenting time in accordance with an order of the court;

(j)   whether either parent has established, or is planning to establish, a residence outside of the state.

*Kelly v. Kelly*, 2d Dist. No. 2001-CA-52, 2002-Ohio-1204.

{¶13} A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody. *Shaffer v. Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶20. The fact that a grandparent who is also living in the home and who has shown a strong commitment to helping provide child care is relevant under R.C. 3109.04. *Davis v. Davis* (1997), 123 Ohio App.3d 19, 21, 702 N.E.2d 1227; see R.C. 3109.04(F)(1)(c). A trial court may also give due consideration to which parent has been the primary caregiver when evaluating the child's interactions and

interrelationships with parents.  *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178.

{¶14} Gerald complains that the trial court didn't properly consider all of the adverse testimony and evidence concerning Rachael.  He believes the court didn't properly analyze that evidence in light of the statutory factors, especially R.C. 3109.04(F)(1)(e), (f), and (j).  However, the trial court issued a seventy page, carefully reasoned judgment entry in rendering its opinion.  This judgment entry meticulously enumerated detailed findings of fact garnered from eleven days of testimony.  Then, the trial court listed every statutory requirement imposed by R.C. 3109.04(F) and R.C. 3109.051(D)[1] and discussed the specific facts as they applied to each of the statutory factors as well as several additional factors that the court considered.  Although Gerald complains of the trial court's findings concerning three of the factors in particular, the court's final decision was based on the totality of the evidence.

{¶15} Gerald claims that the trial court did not give proper consideration to evidence of Rachael's self-threatening and self-destructive behavior.  The court did note that "[Gerald] asserts that [Rachael] has, at times, acted irrationally by threatening suicide, by attempting suicide in the past, and by putting a gun to her head."  (Oct. 17, 2008, Judgment Entry, p. 36.)  The court acknowledged these

---

[1] This statute sets forth factors to  consider when allocating parenting time and visitation.

incidents, but also noted that she was not currently receiving any mental health treatment from any mental health provider, nor was she taking any medication for any mental health condition. There was no professional or expert testimony that Rachael had any mental health issues, and Gerald did not request a psychological evaluation. The trial court had ample opportunity to observe Rachael's behavior, demeanor, and abilities during the course of the court appearances, and more so because she represented herself in all of the proceedings and court hearings. The trial court fully addressed these concerns and concluded that neither parent had placed Caleb at risk of harm while in their respective care.

{¶16} Gerald also contends that Rachael does not meet the criteria of R.C. 3109.04(F)(1)(f) because she has denied him contact with Caleb in the past and has acted to impede visitation. The record does indicate that, prior to any court issuing an order regarding visitation, there were issues concerning visitation, primarily right after their separation, and that some visitations and exchanges were conducted through Patchwork House. However, the evidence demonstrates that the situation improved after the court was involved and issued temporary orders. Gerald fears that Rachael was being cooperative only during the course of the trial and will again deny him access to Caleb, although there was no evidence that Rachael would not honor the court ordered visitation schedules in the future. Rachael's testimony during the course of the hearings indicated that she intended

to honor all visitation orders and encourage Caleb to have a strong parent-child relationship with Gerald. The court concluded that both parties were highly likely to honor and facilitate court approved parenting times and visitation schedules.

{¶17} Gerald's third major concern was that Rachael would relocate and take Caleb back to Queensbury, which is an eleven hour drive from Seneca County. Throughout the trial, Rachel expressed her desire to return to Queensbury, where she had previously owned a home and worked. Rachael's extended family resides in New York, and she claims that Caleb would have the support of these family members, along with her mother, if she resided in Queensbury. The trial court stated that it could not "speculate" on where Rachael may reside in the future. Although Rachael expressed her desire to return to Queensbury, she had not obtained any housing or employment or set forth any specific plans. An award based on future possibilities is contrary to the purpose of R.C. 3109.04, which is to award custody based on present circumstances. *Seibert v. Seibert* (1990), 66 Ohio App.3d 342, 347, 584 N.D.2d 41. If Rachel does intend to return to New York, the trial court reminded her that she would have to comply with the requirements of the Local Rules on relocation. Whether such a relocation would be in the child's best interest would be an issue to be addressed by the court at that time.

{¶18} The record clearly shows that the trial court carefully considered all of the evidence that was both favorable and unfavorable to Rachael. The trial court also had to weigh negative testimony concerning Gerald, including testimony concerning Gerald's drinking, his drinking while driving, and his acknowledged temper. The trial court also considered additional factors, such as the fact that Caleb has been primarily in Rachael's care since his birth and was more bonded with her, and that Rachael has provided a "consistent caring environment" for the benefit of Caleb. The court also considered the assistance Rachael's mother has provided and the close relationship Caleb has with his maternal grandmother. The lengthy and detailed judgment entry discussed every aspect of each party's ability to serve as the custodial parent.

{¶19} We cannot say that the trial court's decision was unreasonable, arbitrary or unconscionable. The trial court carefully weighed all of the evidence and set forth its findings of fact and the conclusions supporting its decision in great detail. The court considered all of the applicable statutory factors along with several additional pertinent factors and determined that the evidence supported a finding that it would be in Caleb's best interest to designate Rachael as the residential parent. There was competent and credible evidence concerning the strengths and the shortcomings for both of the parents. The trial court was in the

best position to observe the witnesses, weigh the evidence and evaluate the testimony.  We do not find that this decision was an abuse of discretion.

{¶20} For the foregoing reasons, both of Gerald's assignments of error are overruled.   Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**