[Cite as *Shipman v. Shipman*, 2015-Ohio-4419.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

ROBBIN SHIPMAN,

    PLAINTIFF-APPELLEE,

    v.

LINDA M. SHIPMAN,

    DEFENDANT-APPELLANT.

CASE NO. 11-14-10

**O P I N I O N**

Appeal from Paulding County Common Pleas Court
Domestic Relations Division
Trial Court No. DIV-12-008

**Judgment Affirmed**

**Date of Decision: October 26, 2015**

APPEARANCES:

    *Billy D. Harmon* **for Appellant**

    *Ian A. Weber* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Linda Shipman ("Linda"), brings this appeal from the judgment of the Common Pleas Court of Paulding County, Ohio, Domestic Relations Division, granting divorce upon complaint filed by Plaintiff-appellee, Robbin Shipman ("Robbin"), allocating parental rights and responsibilities over the parties' minor children, awarding child support, dividing the parties' remaining marital property, and overruling Linda's contempt motions. For the reasons that follow, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2} Linda and Robbin were married on December 3, 2005. On January 17, 2012, Robbin filed a complaint for divorce. (R. at 1.) At the time, the parties had one minor child together, C.S., and Linda was pregnant with the second child. According to the Complaint, Linda "informed [Robbin] that he is not the unborn child's biological father." (*Id.*) Robbin requested an order designating him the temporary and permanent residential parent of C.S. Similarly, Linda requested to be named the residential parent of C.S. and asked to be awarded child support from Robbin during the pendency of the proceedings. (*Id.*; R. at 22.) The trial court ordered Robbin to move out of the marital residence and referred the matter for mediation. (R. at 15.)

{¶3} In March 2012, the parties attended mediation and agreed to a shared parenting plan. (*See* R. at 23, Ex.) Subsequently, the trial court designated

parenting time for the parties and restricted the parties from allowing C.S. to be in the presence of either party's boyfriend or girlfriend. (R. at 24.) Additionally, the trial court ordered Robbin to pay Linda the sum of $69.04 per month as and for child support of C.S. (R. at 27.)

{¶4} Linda gave birth to her second child, A.S., in May 2012. The child was given the last name of Linda's boyfriend, Joe Wort, who was also listed on the child's birth certificate. Upon the trial court's order, a DNA testing was conducted in order to determine whether Robbin was the child's biological father. (*See* R. at 20.) The test results indicated that Robbin was the child's father. (R. at 28.) Accordingly, Robbin requested an order for visitation with the infant child and an order establishing child support. (R. at 29.) Further, Robbin requested an order for a change of the child's name and birth certificate, to reflect Robbin as the child's father. (*Id.*)

{¶5} In August 2012, Linda filed a motion requesting that Robbin not be allowed to visit with A.S. because she claimed that the child had been conceived as a result of a sexual assault by Robbin. (R. at 38.) In particular, Linda alleged that she had not "engaged in sexual relations with [Robbin] since March of 2011" and therefore, she "believe[d]" that Robbin sexually assaulted her, which resulted in the pregnancy at issue. (*Id.*, Aff.) In response, Robbin requested an order requiring Linda to submit herself to a mental examination. (R. at 40.) Following a

hearing[1] on this matter the trial court granted Robbin visitations with the infant son. (*See* R. at 39, 41, 46.) Later, the trial court also ordered A.S.'s name change and correction of his birth certificate. (R. at 67.) No child support for A.S. was ordered at this time.

{¶6} Also in August 2012, Linda filed a motion requesting "an order appointing Dr. Stephen Ross of Fort Wayne, Indiana for purposes of a custody evaluation for the minor children." (R. at 32.) Despite Robbin's opposition, the trial court granted the motion and ordered Linda to pay Dr. Ross's retainer. (R. at 30, 35.) After Linda paid a $4,000.00 retainer and Dr. Ross's service agreement was received by the parties, Robbin filed a motion requesting relief "from the obligation of undergoing the evaluation, testing, interviewing, home visits, document and questionnaire submission, and 'other activities' required by Dr. Stephen Ross." (R. at 58.) Robbin explained that Dr. Ross's services, which were estimated to exceed the initial $4,000.00 retainer, were very costly and created an unnecessary inconvenience of traveling to Fort Wayne, Indiana, for appointments. (*Id.*) Robbin suggested an alternative solution of appointing a guardian ad litem. (*Id.*) The trial court scheduled this matter for a hearing, but prior to the hearing Linda filed a motion to show cause against Robbin. (R. at 60.) In her motion, Linda alleged that Robbin failed to comply with the trial court's order from August 20, 2012, by canceling an appointment with Dr. Ross. (*Id.*) Of note, the

---

[1] The transcript of that hearing is not in the record on appeal.

trial court's August 20, 2012 judgment entry only ordered the appointment of Dr. Ross and payment for his services. (*See* R. at 35.) After a hearing, the trial court determined that Dr. Ross should continue his psychological evaluation and that C.S. should attend counseling with Dr. Gilbert Butler ("Dr. Butler"). (R. at 75.)

{¶7} In May 2013, the trial court issued an order instructing the parties to "file their tax returns in the most efficient manner" and "place the tax refund in counsel for Defendant's escrow account pending further court order." (R. at 75.) It appears, however, that the money from the tax refund was deposited into Robbin's attorney's escrow account instead of Linda's attorney's escrow account. (*See* R. at 80.) In September 2013, Robbin's attorney withdrew from the case, causing Linda to file a motion to transfer funds into her attorney's escrow account. (*Id.*) This matter was assigned for a hearing on February 20, 2014, but before that, in January 2014, Linda filed a motion to show cause, alleging that Robbin violated the court's order by authorizing "his tax refunds be utilized towards his outstanding statement." (R. at 89.) The parties appeared at the hearing on February 20, 2014,[2] and the trial court ordered a mediation session with a family specialist. (*See* R. at 90.)

### *Final Hearing*

{¶8} The trial court conducted a final hearing in the case, which took place on two days, May 14, 2014, and June 20, 2014. The trial court heard testimony of

---

[2] No transcript of that hearing appears in the record on appeal.

Robbin and Linda regarding their claims for permanent custody of the children. Additionally, Robbin testified about the reasons why he canceled his first appointment with Dr. Ross. Linda testified about her employment and earnings. She testified about her treatment for depression and anxiety, as well as her history with depression and anxiety. The parties also testified about the 2012 tax return.

{¶9} Additionally, the following witnesses testified on Robbin's behalf: Chuck Starry—Linda's brother, Stephanie McCullough—Robbin's sister, Brian Rittenhouse—Robbin's former neighbor and Linda's current neighbor, who is also the father of C.S.'s best friend, and Keith Shipman—Robbin's brother. Robbin's witnesses testified about their positive opinion on Robbin's parenting skills and negative opinion on Linda's parenting skills, including conflicts between Linda and C.S. There was also testimony about Linda's mental instability issues and her relationships with other men. Additionally, Lynette Bail—C.S.'s teacher testified about her positive relations with both parents and with C.S.

{¶10} Linda called Dr. Butler—C.S.'s treating therapist, Denise Coleman—C.S.'s school secretary, Timothy Manz—elementary principal at C.S.'s school, Whitney Snider—Linda's daughter, and Arlene Hootman—Linda's mother. Dr. Butler gave his testimony about C.S.'s need for further treatment. Whitney and Arlene expressed positive opinion on Linda's parenting skills and criticism of Robbin's parenting skills. Ms. Coleman noted that in her interactions with Linda "it wasn't always pleasant," but things have been better. (Tr. at 261.) Ms.

Coleman also submitted C.S.'s school attendance records, which indicated that C.S. was tardy or missed school while in the care of each of the parents. (*See* Ex. 3.) Neither school official noted particular problems in their interactions with Robbin.

{¶11} In addition, the parties stipulated to the admission of Dr. Ross's report regarding his custody evaluation. Among the relevant things in Dr. Ross's report were concerns over Linda's mental issues, which included hospitalization for depression and suicidal thoughts. The psychological tests administered by Dr. Ross indicated "a number of behavioral and emotional problems warranting continued treatment." (Joint Ex. 1 at 30-31.) No concerns were noted regarding Robbin's mental health functioning. Dr. Ross mentioned difficulties in the parent-child relationship between Linda and C.S. He expressed concerns "about Linda's rationale for involving Joe Wort in the children's lives before there being a more definite resolution in this divorce case." (*Id.* at 31.) Dr. Ross was further troubled that Linda considered moving to North Carolina, where Joe Wort lives, without regard to the boys' relationship with Robbin. Dr. Ross was "concerned about parental supervision on Linda's part," and mentioned a fire in her garage caused by C.S. and his friend. (Joint Ex. 1 at 20.) During his home visits, Dr. Ross noticed alcohol bottles in Linda's house and concluded that she smoked in the presence of the children. Dr. Ross also noted that "Linda's home was in a state of disarray" and had a recent flea infestation problem. (*Id.* at 20-21.)

{¶12} No safety concerns were noted in Robbin's household. There was no evidence of drugs, alcohol, or cigarettes. Robbin's "home appeared to be neat, clean, and relatively organized." (*Id.* at 20.) In spite of Linda's allegations that Robbin abused marijuana, a random drug test administered by Dr. Ross came back negative for the presence of this substance. In conclusion, Dr. Ross recommended that Robbin "be nominated as the parent more capable of making decisions that are in the best interests of the children." (*Id.* at 31.)

*Judgment Entry*

{¶13} On July 10, 2014, the trial court issued a partial judgment entry in which the trial court granted Robbin a divorce from Linda and divided the parties' marital property pursuant to their agreement. (R. at 94.) On October 8, 2014, the trial court issued a twenty-page judgment entry, addressing all remaining matters in the case. (R. at 96.) As relevant to this appeal, the trial court designated Robbin as the residential parent of C.S. and A.S., and granted Linda parenting time with the children. (*Id.* at 6.) The trial court ordered Robbin to pay back child support for A.S. for the time period between October 1, 2012, and October 12, 2014. (*Id.* at 10.) Since this order resulted in "substantial child support arrearage," the trial court decided that this obligation would be satisfied from the funds of the 2012 tax refund, as further discussed below. (*Id.*) The trial court further ordered Linda to pay child support in the amount of $68.29 per month, commencing on October 12, 2014. (*Id.* at 11.) The amount of child support

deviated from the standard guideline amount "due to the additional time [Linda] has with the children," which the trial court determined to be "50% shared parenting calculation." (*Id.*) Linda was to claim C.S., and Robbin was to claim A.S. for the tax dependency exemption each year, and when C.S. was no longer capable of being claimed, the parties were to alternate the tax exemption for A.S. only.

**{¶14}** With respect to the proceeds of the 2012 tax refund, the trial court found that Robbin had received a total of $778.00, which he used "for his own benefits to pay his former attorney." (*Id.* at 15.) Linda had received a total of $8,234.00, "all of which [she] retained for herself." (*Id.* at 16.) The trial court determined that the total amount of the 2012 income tax refund, $9,012.00, should be divided equally between the parties. As a result, the trial court arrived at the following calculation. Each party should have received $4,506.00 from the 2012 tax refund. Because Robbin had already retained $778.00 and Linda had already retained $8,234.00, Robbin was entitled to $3,728.00 from Linda, to arrive at the amount of $4,506.00 allocated to each party. Instead of ordering Linda to pay this amount to Robbin, however, the trial court used this sum to satisfy Robbin's past child support obligation for the time period between October 1, 2012, and October 12, 2014.

**{¶15}** Lastly, the trial court overruled Linda's motions for contempt, finding that Robbin should not be held in contempt for canceling the December

2012 appointment with Dr. Ross because he "was following the advice of his defense attorney" and he was "ordered to pay the cost of the canceled appointment." (*Id.* at 18.) Furthermore, the trial court found that "there was insufficient evidence presented" to support a finding of a violation of the court's order "for authorizing his tax refunds to be used to pay his outstanding statement to his former attorney." (*Id.* at 19.)

{¶16} On November 5, 2014, Linda filed this timely appeal, raising the following assignments of error for our review.

*Assignments of Error*

I. **The trial court abused its discretion in allocating parental rights and responsibilities.**

II. **The trial court abused its discretion in awarding child support.**

III. **The trial court abused its discretion in dividing marital property.**

IV. **The trial court abused its discretion in overruling Defendant's Motions to Show Cause.**

*Standard of Review*

{¶17} An appellate review of the trial court's decision regarding the above issues is under the abuse of discretion standard. *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 20 (child custody, award of child support, and division of marital property); *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 26 (allocation of marital assets); *Walker*

*v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 38 (contempt).  A trial court will not be found to have abused its discretion unless its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Muckensturm v. Muckensturm*, 3d Dist. Hancock No. 5-11-38, 2012-Ohio-3062, ¶ 16; *Bruce v. Bruce,* 3d Dist. Marion No. 9-10-57, 2012-Ohio-45, ¶ 13.  With this standard in mind, we proceed to review Linda's assignments of error.

### *First Assignment of Error—Allocation of Parental Rights and Responsibilities*

{¶18} Linda first challenges the trial court's decision to designate Robbin as the residential parent of the children, alleging that this decision was improperly based on future possibilities.  Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities.  *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8.  The statute requires that in allocating the parental rights and responsibilities, the court "shall take into account that which would be in the best interest of the children."  R.C. 3109.04(B)(1).  It further provides for options available to the trial court when allocating parental rights and responsibilities: "primarily to one of the parents" or "to both parents."  R.C. 3109.04(A); *see Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 23-24.

{¶19} Here, neither party filed a shared parenting plan and each parent wanted to be named the residential parent and legal custodian of the minor children.  R.C. 3109.04 instructs that in this situation, the trial court "shall take

into account that which would be in the best interest of the children" and shall designate one of the parents "as the residential parent and the legal custodian of the child." R.C. 3109.04(A)(1) and (B)(1). Further subsections of that statute spell out ten factors that the court shall consider in order to determine the best interest of the child. R.C. 3109.04(F)(1). Any additional relevant factors shall be considered as well. *Id.*

> In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a)  The wishes of the child's parents regarding the child's care;
>
> (b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d)  The child's adjustment to the child's home, school, and community;
>
> (e)  The mental and physical health of all persons involved in the situation;
>
> (f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent

pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).   Linda contends that "the trial court relied heavily, if not exclusively, on factors (e) and (j)," and on speculations about their future implications, instead of focusing on present factors.  (App't Br. at 9.)

- 13 -

**{¶20}** Although the statute does not include an express prohibition against considering future possibilities in making the best interest determination, Linda cites a 2:1 decision of the Twelfth District Court of Appeals for a proposition that "[a] custody award based on such future possibilities is contrary to the purpose of R.C. 3109.04 which is to award custody based on the present circumstances." *Seibert v. Seibert*, 66 Ohio App.3d 342, 347, 584 N.E.2d 41 (12th Dist.1990); *see also Reinhart v. Allen*, 3d Dist. Seneca No. 13-08-42, 2009-Ohio-5277, ¶ 17. *Seibert* and *Reinhart* stand for a proposition that *speculations* about future *possibilities*, while ignoring present circumstances, are contrary to the purpose of the statute. *See Seibert* at 347 (noting that a psychologist's "recommendations focused upon future possibilities rather than present factors" and reversing the case because of "the trial court's reliance upon *possible* future circumstances coupled with its failure to consider the child's tender years") (emphasis added); *Reinhart* at ¶ 14, 17 (affirming the trial court's refusal to " 'speculate' on where [mother] may reside in the future," because "the trial court's final decision was based on the totality of the evidence").

**{¶21}** There is no indication that in the instant case, the trial court based its decision on *speculation* about future *possibilities*, while ignoring other circumstances. On the contrary, a review of the judgment entry discloses that the trial court discussed in detail each of the factors of R.C. 3109.04(F)(1). (*See* R. at 96, at 3-6.) Out of the ten factors, the trial court found three to be most relevant.

In particular, when discussing factor (d), the child's adjustment to school, the trial court expressed its concern "about [Linda] discussing the idea of homeschooling with [C.S.] during the pendency of this matter." (R. at 96, at 4.) With respect to factor (e), the mental and physical health of persons involved, the trial court stated, that Linda's mental health "causes the Court concern." (*Id.*) The trial court found that conclusions reached by Dr. Ross in his report were consistent with evidence. Therefore, relying on Dr. Ross's report, the trial court noted Linda's " 'behavioral and emotional problems warranting continued treatment,' " "difficulties in the parent-child relationship," "concern about Linda's choice to involve her new boyfriend (Joe Wort) with the minor children during the pendency of the divorce," and "concern about Linda's choice to discuss a move to North Carolina with [C.S.]." (*Id.* at 4-5.) The trial court noted that there were no concerns about Robbin's mental health. When discussing factor (j), the trial court recognized that there are no "immediate plans to move to North Carolina." (*Id.* at 6.) It noted, however, that it took into consideration "an ongoing relationship with Joe Wort," who is a resident of North Carolina, and the "discussions" that have "occurred relating to Linda moving to North Carolina." (*Id.*)

{¶22} A review of the trial court's judgment entry shows that the concerns expressed by the trial court related to the present circumstances or Linda's past actions. For example, Linda's actions of discussing the idea of homeschooling with C.S., involving her boyfriend in the situation in spite of the trial court's

orders to the contrary, and discussing a move to North Carolina were Linda's past choices, which Dr. Ross and the trial court considered to be concerning. Linda's "behavioral and emotional problems warranting continued treatment" and the difficulties in her relationship with C.S. are present circumstances, which need to be reviewed under the statute's factor (e). Likewise, a parent's plan to establish a residence outside of the state, even though it relates to a future action, needs to be considered under factor (j). While the trial court noted that no immediate plans had been made, the *present* relationship with an out-of-state boyfriend could not be ignored. Although the trial court quoted Dr. Ross's statement that Linda's behavioral and emotional problems " 'may adversely affect her ability to parent the children,' " there is no indication that this single statement about future possibilities was the sole reason for the trial court's decision. (*Id.* at 4.)

**{¶23}** Accordingly, Linda's allegations that the trial court impermissibly relied on future possibilities, instead of present factors, have no merit. Our review of the entire record on appeal supports the trial court's conclusions and its finding that under the totality of the circumstances, designating Robbin as the residential parent of C.S. and A.S. was in the best interest of the children. Based on the foregoing, we overrule the first assignment of error.

### *Second Assignment of Error—Child Support*

**{¶24}** Linda's second assignment of error alleges two reasons for why the trial court abused its discretion in awarding child support. First, Linda complains

- 16 -

about the trial court's failure to provide an explanation as to how it arrived at the income figure in the child support computation worksheets. Linda's second complaint with respect to the award of child support concerns the tax dependency exemption. We address each issue separately.

*Calculation of Income*

**{¶25}** Based on the lack of the explanation for the income figure used by the trial court in the child support computation summary worksheet, Linda suggests that the trial court utilized income figures from her prior employment and failed to properly verify her current earnings. In her argument, Linda relies on R.C. 3119.05(A), which requires verification of

> [t]he parents' current and past income and personal earnings * * * by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.

R.C. 3119.05(A). We have recently recognized an established rule in Ohio that "*parties* must exactly adhere to R.C. 3119.05(A) when documenting income." (Emphasis added.) *Montgomery v. Montgomery*, 3d Dist. Union No. 14-14-22, 2015-Ohio-2976, ¶ 37, citing *Brose v. Copeland*, 3d Dist. No. 13-13-08, 2013-Ohio-3399, ¶ 16, *Reynolds–Cornett v. Reynolds,* 12th Dist. Butler No. CA2013-09-175, 2014-Ohio-2893, ¶ 20, *and Benjelloun v. Benjelloun,* 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 12 (" '[A] parent must exactly adhere to [the documentation] requirement and prove their current income by presenting those

documents listed in R.C. 3119.05(A)' "), quoting *Ornelas v. Ornelas*, 2012-Ohio-4106, 978 N.E.2d 946, ¶ 23 (12th Dist.).

{¶26} In the instant case, Linda provided documentation about her income from 2012 and 2013, by submitting copies of her tax returns from these years. (*See* Ex. 12-14.)  The income listed on the most recent form was $29,568.00.  (Ex. 12.)  Linda testified that in 2013, she worked as a nurse at Van Wert County Hospital, but she lost that job due to "an infraction." (Tr. at 382.)  She testified that her RN license was current and there were no reasons for why she would not be able to continue to work as a registered nurse.  (Tr. at 383.)  At the time of the trial, Linda worked "for an individual person," providing "in-home care."  (Tr. at 377.)  She testified that as a result, her income in 2014 would change.  (Tr. at 448.) Linda testified that she would receive $300.00 for a 24-hour shift and $650.00 for a 48-hour shift.  (Tr. at 380-381.)  She would get paid $14.50 an hour for "going over the allotted hours."  (Tr. at 381.)  In support of this testimony, Linda submitted two "invoices that [she has] to write" and provide to her employer in order to get paid.  (Tr. at 380.)  She testified:

> I would give them like an invoice.  It would be like I was self-employed, and I write an invoice.  You know, they have an amount that they pay you for that 24-hour period of care, and they pay me weekly.

(Tr. at 379.)  The "invoices" covered a period of March 30, 2014, through April 14, 2014, and showed five entries corresponding to the dates on which Linda

provided care to the individual, with charges of $300.00, $300.00, $350.00 and $21.75. (Tr. at 378-379; Ex. 7.) Of note, the copies of invoices before us do not have Linda's name on them. (*See* Ex. 7.) In the child support computation summary worksheet, the trial court used a figure of $29,568.00 as Linda's income. (R. at 96, App. C.)

**{¶27}** Based on the statute and Ohio case law, we conclude that the trial court did not err in using Linda's 2013 income, which was verified by her tax return, rather than her testimony about the two weeks of her 2014 income, which was not supported by any verifiable documentation contemplated in R.C. 3119.05(A). We have recently addressed a similar issue in a Union County case, in which we reversed the trial court's judgment because the income was calculated "*entirely based upon Heather's testimony.*" (Emphasis sic.) *Montgomery*, 3d Dist. Union No. 14-14-22, 2015-Ohio-2976, at ¶ 48. "The statute and the case law interpreting it require more than testimony to satisfy the burden of proof." *Id.* We noted that mother's "documentation for only three months out of the year" was incomplete and did not contain information from "which the court could accurately or properly extrapolate her expected income." *Id.*

> Our determination that this documentation is insufficient is consistent with this Court's and other Courts' precedents on this issue. In *Basham v. Basham*, 3d Dist. Allen No. 1-2-37, 2002-Ohio-4694, we reversed a trial court's determination of gross income where insufficient documentation was presented to support a trial court's income determination. *Basham* at ¶¶ 7-8. In *Brose v. Copeland*, 3d Dist. Seneca No. 13-13-08, 2013-Ohio-3399, we

> affirmed a trial court's finding that testimony could not substitute for a lack of documentary evidence under R.C. 3119.05(A). *See Brose* at ¶¶ 15-17. Similar to this Court's precedent, the Twelfth District held in *Ornelas v. Ornelas,* 12th Dist. Warren No CA2011-08-094, 2012-Ohio-4106, ¶ 25, that, "Allowing a party in a divorce proceeding to reduce his gross income level, and therefore his child support obligation, by testimony alone, without proper verification as required under R.C. 3119.05(A), is an abuse of the trial court's discretion."

*Id.* at ¶ 51; *see also Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, 858 N.E.2d 831, ¶ 53 (9th Dist.) ("Because in November 2003, Howard had not yet filed his personal tax return, the trial court was required by statute to review the tax returns from 2000, 2001, and 2002. * * * This court finds that per statute, the trial court was restrained to review documents, not testimony, to establish Howard's income.").

**{¶28}** Based on the above, we conclude that Linda's contentions have no merit. She failed to support her claims about her current income with documentation required by R.C. 3119.05(A). The self-generated "invoices" can hardly be told to resemble the required by statute "receipts and expense vouchers related to self-generated income." R.C. 3119.05(A). Therefore, the trial court was required to use Linda's tax returns to ascertain her income for the purpose of determining child support. A review of the trial court's judgment entry and attached to it Child Support Computation Summary Worksheet confirms that the

trial court used the number reflected in Linda's 2013 tax return as her income figure. That action was consistent with the statute.[3]

{¶29} Therefore, we reject Linda's complaint that the trial court erred by failing to provide an explanation as to how it arrived at the income figure. We further affirm the trial court's use of income figures from Linda's prior employment.

*Tax Dependency Exemption*

{¶30} Linda's second complaint with respect to the award of child support concerns the tax dependency exemption. Here, Linda relies on R.C. 3119.82, which states:

> In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

R.C. 3119.82. Linda asserts that "there is no indication that the trial court considered R.C. 3119.82." (App't Br. at 12.) As a result, she demands reversal so that the trial court can consider it and enter its findings in the judgment entry. Of note, Linda does not state that she was harmed in any way or that the trial court improperly allocated the tax dependency exemption. Furthermore, she

---

[3] We note that this opinion does not preclude Linda from filing a motion to modify support pursuant to R.C. 3119.79, based on a change of income, if such change is properly documented.

acknowledges that "a trial court is not required to state on the record its reasons for awarding tax dependency exemptions." *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 35.

**{¶31}** We held in *Clark* that the record only needs " 'to include financial data in relation to the above factors to support the trial court's decision." *Id.*, quoting *Ankney v. Bonos,* 9th Dist. Summit No. 23178, 2006-Ohio-6009, ¶ 40, *overruled on other grounds by Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787. The record in the instant case includes data relating to the factors required by statute. (*See*, e.g., R. at 96, App. C. (including local income tax and health insurance expense numbers in the child support computation).)

**{¶32}** We note that both parties were allowed to share in tax savings equally, as a result of the trial court's express consideration of the amount of time the children spend with each parent. (*See* R. at 96, at 11.) We further note that "[p]ursuant to the statute, the custodial parent is presumed to be entitled to claim a minor child for income tax purposes, and a trial court may only award the tax exemption to a non-custodial parent if it finds that doing so serves the best interests of the child." *Hall v. Hall*, 3d Dist. Hardin No. 6-10-01, 2010-Ohio-4818, ¶ 49. As a non-residential parent, Linda was not entitled to the exemption unless the trial court determined that it would be in the best interest of the children to grant the exemption to her. *See id.* It is thus startling that Linda complains

about being granted this exemption. We recognize, however, that Robbin did not appeal the trial court's judgment[4] and the trial court's express consideration of the equal parenting time between the parties justifies the equal tax exemption. *See id.* Accordingly, the trial court did not abuse its discretion in allocating the tax dependency exemption.

{¶33} Based upon the foregoing discussion, we overrule the second assignment of error.

### *Third Assignment of Error—Division of 2012 Tax Refund*

{¶34} While this assignment of error broadly challenges the trial court's division of marital property, the only matter at issue is allocation of the proceeds of the 2012 tax refund. The trial court divided this asset equally between Linda and Robbin. Linda alleges that such a division was improper. She asserts that Robbin did not deserve half of the 2012 return because he had failed to contribute to household and childcare expenses throughout that year.

{¶35} It is well established that

> [i]n any divorce action, the starting point for a trial court's analysis is an equal division of marital assets. However, R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable.

---

[4] Even though Robbin did not file a notice of cross appeal, as required by App.R. 3(C), in his brief he discusses an error in the trial court's calculation of child support and demands reversal on grounds other than the ones raised by Linda. We lack jurisdiction to consider his claim.

*Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5, citing R.C. 3105.171(C), *and Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *accord Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 26.

**{¶36}** In the instant case there is no indication that equal division of property was inequitable. While Robbin testified that he did not contribute to household bills after he had moved out of the marital residence, Linda provides no support for her suggestion that such failure to contribute, while the party does not reside in the marital residence, requires deviation from the equal division of assets. There was no testimony that the proceeds of the 2012 tax refund resulted from the expenses Linda incurred with respect to the marital residence and a review of the attached exhibits does not support such an inference. We further note that Linda claimed both children as her 2012 exemption and received a child tax credit for that year. (*See* Ex. 13, 14.) Furthermore, Linda fails to recognize that Robbin paid child support for C.S. in 2012, and that the trial court ordered back child support for A.S., which covered the period of time in 2012, when Robbin was recognized as the father.

**{¶37}** Based on our review of the record and the attached exhibits, we cannot conclude that the equal division of the 2012 tax refund was contrary to law, unreasonable, unsupported by evidence, or grossly unsound. Accordingly, we overrule the third assignment of error.

### *Fourth Assignment of Error—Contempt*

**{¶38}** In this assignment of error Linda alleges that the trial court abused its discretion when it overruled her two motions to show cause and refused to find Robbin guilty of contempt of court. The first motion asked the trial court to hold Robbin in contempt for canceling his initial appointment with Dr. Ross. The second motion related to the 2012 tax refund proceeds, which were used to pay his former attorney, in violation of the trial court's order.

**{¶39}** As we have recently recognized, "[a] trial court has inherent authority to enforce its prior orders through contempt." *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 60, citing *Dozer v. Dozer,* 88 Ohio App.3d 296, 302, 623 N.E.2d 1272 (4th Dist.1993), *and* R.C. 2705.02(A). Contempt proceedings are classified as either civil or criminal. *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). The Ohio Supreme Court provided the following distinguishing features of each type of contempt actions:

> Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction. *State ex rel. Corn v. Russo,* 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). If the sanction is remedial or coercive and for the benefit of the complainant rather than the court, the contempt proceeding is usually classified as civil. *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is jailed until he or she complies with the court order. *Id.* On the other hand, criminal contempt is usually characterized by unconditional prison

terms or fines. *Id.* at 253–254, 416 N.E.2d 610. The purposes behind the sanction in criminal contempt are primarily to punish the contemnor and to vindicate the authority of the court. *Id.* at 254, 416 N.E.2d 610. To determine the purpose of the sentencing court, the entire record must be reviewed. *State v. Kilbane,* 61 Ohio St.2d 201, 206, 400 N.E.2d 386 (1980) (the trial court's sanction does not dispose of the issue whether contempt is civil or criminal in nature; rather, it is some evidence of what was sought to be accomplished).

*Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12.

{¶40} At the time when the trial court heard the allegations related to Linda's contempt motions (at the final hearing), Robbin had already attended the sessions with Dr. Ross. Therefore, at this point, there was no coercive or remedial purpose of the contempt sanctions to be served. The only conclusion thus is that Linda complains about the trial court's failure to hold Robbin in criminal contempt, to punish him for canceling his initial appointments.

{¶41} The burden of proof in criminal contempt is proof beyond a reasonable doubt. *Id.* at ¶ 11. Furthermore, "[a] party subject to criminal contempt is afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys." *Id.* Our review of the record does not support a finding of a willful violation of the trial court's order beyond a reasonable doubt. As noted above, the trial court's August 20, 2012 order only ordered the appointment of Dr. Ross and payment for his services. (*See* R. at 35.) The order was not expressly directed to Robbin, as Linda was the party who was ordered to pay Dr. Ross's fees. While implied in the judgment entry appointing Dr. Ross might have

been a requirement of following his recommendations, the filing of a motion with the trial court requesting that a party be excused from compliance with what was considered a burdensome, costly, or unreasonable demand by the doctor, is no cause for criminal punishment. After the trial court's order to undergo evaluation with Dr. Ross, Robbin complied with no noted objections. Accordingly, the trial court did not abuse its discretion in finding that Robbin should not be held in criminal contempt for canceling a single appointment and requesting relief from undergoing further evaluations.

{¶42} As it relates to the tax refund proceeds, irrespective of whether the contempt was criminal or civil in nature, we affirm the trial court's finding that there was insufficient evidence to establish a violation by Robbin. As testified, Robbin's prior attorney sent him a letter saying that he was going to apply the 2012 tax refund toward Robbin's bill. (Tr. at 82.) Linda offered no evidence that Robbin approved of this decision or that he was responsible for it. Accordingly, whether we use the civil contempt standard of clear and convincing evidence, *see Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, at ¶ 61, or the criminal contempt standard of proof beyond a reasonable doubt, Linda provided no evidence that Robbin had failed to comply with the trial court's order.

{¶43} The trial court did not abuse its discretion in overruling Linda's motions to show cause. Therefore, the fourth assignment of error is overruled.

## *Conclusion*

**{¶44}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Paulding County, Ohio, Domestic Relations Division, is therefore affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/hlo**